UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TINA OREBAUGH, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     vs. | ) | 1:11-cv-144-RLY-TAB |
| | ) | |
| NSK CORPORATION, | ) | |
|     Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Following her termination, Plaintiff, Tina Orebaugh ("Plaintiff"), filed the present Complaint against her former employer, NSK Corporation ("NSK"). Plaintiff alleges that: (1) NSK discriminated against her on the basis of her gender, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"); and (2) NSK retaliated against her for exercising her rights under Title VII. NSK now moves for summary judgment. For the reasons set forth below, the court **GRANTS** the motion.

**I.     Background**

Plaintiff worked at NSK as a setup material handler in the Flange Unit, also known as Hub 3. (Deposition of Tina Orebaugh ("Plaintiff Dep.") at 25; (Deposition of Jeff Thornburg ("Thornburg Dep.") at 27). The main purpose of a setup material handler is to coordinate the movement of other material handlers. (*Id*. at 26). It is undisputed that Plaintiff was the only female material handler on her unit.

On June 16, 2010, Plaintiff's supervisor, Jason McHenry ("McHenry"), asked Plaintiff to move a drum of daido.[1] (*Id*. at 112). Plaintiff responded, "Why don't you get your production setups to do it?" (Plaintiff Dep. at 112). McHenry said that they were busy; Plaintiff retorted that she was too. (*Id*.). McHenry told her he would come back in five minutes and ask her again. (*Id*. at 112-13). When McHenry did so, she refused again. (*Id*. at 113).

McHenry escorted Plaintiff into a conference room. (*Id*. at 113-14). There, Todd Gray ("Gray"), a unit coordinator and McHenry's boss, asked Plaintiff to move the daido. Plaintiff refused. (*Id*. at 111). When Gray asked Plaintiff why she refused to move the daido, she "rambled on," complaining about certain aspects of her job. (*Id*.). Gray asked Plaintiff if she understood how much she made an hour, and that she was not going to find another job paying her that kind of money anywhere else. (*Id*.). Plaintiff "lost it" and told him that he could fire her because she just did not care anymore. (*Id*. at 114-15). Plaintiff understood that, pursuant to the employee handbook, she could be discharged for insubordination for refusing the direct order of a supervisor. (*Id*. at 115-16) ("Q: And insubordination includes refusing the direct order of a supervisor?" A: Yes. Q: And isn't that what you did? A: Yes.")).

Gray sent Plaintiff home. (*Id*. at 115). On June 18, 2010, Cynthia Laurain

---

[1] Daido is a liquid coolant added to temper steel in the cooling process. (Thornburg Dep. at 33). It is contained in a 55 gallon tub, weighing over 400 pounds, and is moved by the use of a forklift or drum cart. (*Id*. at 34-37).

("Laurain"), the Human Resources Manager, contacted Plaintiff by phone and advised Plaintiff that she was fired for insubordination. (*Id.* at 116; 2011 Affidavit of Cynthia Laurain ¶ 4. *See also* Employee Handbook (stating that insubordination is a terminable offense)). The decision to fire Plaintiff was solely Laurain's, based upon the facts regarding the June 16 incident as reported to her by Gray and McHenry. (2011 Laurain Aff. ¶ 4).

All other facts necessary for the resolution of this motion will be discussed in the Discussion Section where appropriate.

## II.     Summary Judgment Standard

Summary judgment is appropriate if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The motion should be granted only if no rational trier of fact could return a verdict in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When ruling on the motion, the court views the record and all reasonable inferences in the light most favorable to the nonmoving party. *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003). If the nonmoving party bears the burden of proof on an issue, that party may not rest on mere allegations or denials in its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment . . . ."); *Silk v. City*

*of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The moving party need not disprove the nonmovant's case; rather, it may prevail by establishing the absence of evidentiary support in the record for the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

### III.   Discussion

Plaintiff alleges that her termination for refusing to move the daido was discriminatory because male material handlers were not required to move the daido, and when they refused to move the daido, they were not terminated.  Plaintiff also alleges that her termination was in retaliation for engaging in protected activity on June 12, 2010. The court will begin with Plaintiff's gender discrimination claim.

#### A.   Gender Discrimination

Plaintiff argues her gender discrimination claim under the indirect method of proof.  This requires her to first establish a prima facie case of gender discrimination, which consists of the following four elements: (1) she is a member of a protected class; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated males more favorably. *Weber v. Univ. Research Ass'n, Inc.*, 621 F.3d 589, 593 (7th Cir. 2010); *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 592 (7th Cir. 2008).  Plaintiff's claim falters on the fourth element.

Employees are similarly situated if they are "directly comparable to [the plaintiff] in all material respects."  *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir.

2002).  "This generally requires the plaintiff to show that the comparator had the same supervisor, was subject to the same employment standards, and had engaged in conduct similar to that of the plaintiff."  *Eaton v. Indiana Dep't of Corrections*, 657 F.3d 551, 556 (7th Cir. 2011) (citing *South v. Ill. Envtl. Prot. Agency*, 495 F.3d 747, 752 (7th Cir. 2007)); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000).  The similarly situated inquiry is "a flexible one that considers 'all relevant factors, the number of which depends on the context of the case.'"  *Humphries v. CBOS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) (quoting *Radue*, 219 F.3d at 617).  A plaintiff need not show complete identity with a proposed comparator, but she must show "'substantial similarity.'"  *Id*. (quoting *Radue*, 219 F.3d at 618).

Plaintiff names four male comparators in support of her claim: (1) Jeff Thornburg ("Thornburg"), (2) Jeff Agnew ("Agnew"), (3) McHenry, and (4) Jerry Kaucher ("Kaucher").  Plaintiff claims that Thornburg refused a request by line operators to retrieve daido on at least two occasions, and that both Thornburg and Agnew refused her own personal requests to move the daido on multiple occasions.  (Thornburg Dep. at 40; Plaintiff Dep. at 92-94).  Thornburg's and Agnew's refusal to comply with her requests to move the daido (or any male material handler's failure to comply with a nonsupervisory worker's request) is irrelevant to the present inquiry.  According to NSK policy, refusing a supervisor's order is an act of insubordination, a terminable offense; refusing a coworker's request is not.  Moreover, Plaintiff's attempt to hold herself out as having a supervisory role over Thornburg or Agnew is not supported by the evidence.  She

testified that if Thornburg or Agnew refused her request to retrieve the daido, she would tell Kaucher, a supervisor in the plant.  (Plaintiff Dep. at 99).  Plaintiff testified that she did not know what happened after that; Thornburg or Agnew may have followed Kaucher's request and moved the daido, or they may not have.  (*Id.*).  Significantly, Plaintiff testified that she never personally observed Thornburg and Agnew refuse a direct order from a supervisor to retrieve the daido, much less three direct orders.  (Plaintiff Dep. at 94-96).  The court therefore finds that Thornburg and Agnew are not similarly situated to Plaintiff.

McHenry and Kaucher held supervisory positions.  Plaintiff claims that Sharon Hutchens ("Hutchens"), a line operator, asked McHenry to obtain daido for her, and he refused. (Deposition of Sharon Hutchens at 3, 12-13, 29-31).  Plaintiff also claims that in May 2011, Diana Roberts ("Roberts"), another line operator, asked Bonita Bell, a material handler, to retrieve the daido, and that Bell ignored her request.  (Affidavit of Diana Roberts ¶ 2).  When Roberts informed Kaucher of the situation, Kaucher responded that material handlers only moved daido as a courtesy to line operators, and it was not part of Bell's job. (*Id.* ¶¶ 3, 4).

McHenry and Kaucher did not hold the same position as Plaintiff; they held supervisory positions, she did not.  In addition, McHenry's alleged refusal to obtain the daido for Hutchens, a line operator, is not substantially similar to the facts in this case, because a subordinate has no authority to tell a superior what to do.  To the extent Plaintiff relies upon Robert's affidavit to show that moving the daido was outside of her

6

job description, Plaintiff's reliance is misplaced. The events addressed in Robert's affidavit occurred approximately a year after the events giving rise to Plaintiff's termination occurred, and therefore, have no relevance to Plaintiff's case. Because McHenry and Kaucher held supervisory positions, and because McHenry and Kaucher did not refuse a direct order from a supervisor, they are not similarly situated to Plaintiff. Plaintiff therefore failed to produce evidence of a male co-worker who engaged in similar misconduct.

Plaintiff relies on *Bellaver v. Quanex Corp.* to support her argument that the fourth element of her prima facie case may be satisfied by a showing that, following her termination, her job duties were absorbed by Thornburg. 200 F.3d 485 (7th Cir. 2000). The facts in *Bellaver* dealt with a company that claimed to have laid off a single employee due to a reduction in force. The *Bellaver* Court held that in a single-discharge case, the subject of a "mini-RIF" could create an inference of discrimination without evidence that a similarly situated employee was treated more favorably, if she could show that employees outside of the protected class absorbed the plaintiff's duties. *Id.* at 495. *Bellaver* is inapplicable to this case because Plaintiff does not suggest that NSK was engaged in a reduction in force when Plaintiff was discharged. The "similarly situated" proof requirement is the appropriate element to use in this case. Accordingly, the court finds Plaintiff cannot establish a prima facie case of sex discrimination.

Even if Plaintiff could establish a prima facie case, she would still have to show that NSK's legitimate and non-discriminatory reason for terminating her – her refusal to

comply with a direct order from her supervisor and her supervisor's supervisor – was a pretext "and that her gender was the real reason she was fired." *Weber*, 621 F.3d at 593. In support of her pretext argument, Plaintiff claims that: (1) similarly situated males were treated more favorably, (2) Plaintiff was held to a higher standard than her peers, (3) McHenry and Gray expected Plaintiff to refuse to move the daido because she had refused to do so in the past, and (4) McHenry and Gray knew it was physically impossible for her to move the daido.

The first two reasons cited above can be easily dispelled. For the reasons previously stated, similarly situated males were not treated more favorably. Moreover, there is no evidence in the record to support her assertion that she was held to a higher standard. Plaintiff's claim that McHenry and Gray knew she would refuse their request to move the daido because she had refused to move it in the past, is speculative at best. No supervisor "expects" his subordinate to disobey a direct order just to fire the subordinate. In addition, Plaintiff admitted that other material handlers, like Thornburg and Jeff Andrew, moved the daido when necessary to keep the factory lines working. (Plaintiff Dep. at 94-96, 98; *see also* Thornburg Dep. at 40 ("If that machine operator runs out of daido and that line begins to go down, then I'll drop whatever I'm doing and go get the daido to keep that line running.")). Lastly, Plaintiff's claim that moving the daido was physically impossible for her due to her stature, is spurious. At no time on June 16, 2010, did Plaintiff inform her supervisors that she could not physically move the daido. In fact, Plaintiff's stated reason for refusing to move the daido on June 16 was that it was not her

job, she was busy, and she was tired of doing dirty jobs.  (*Id*. at 112-15, 154).  Plaintiff's arguments fail to establish that NSK's legitimate and non-discriminatory reason for terminating her was a fabrication.  Without such evidence, summary judgment is appropriate.

**B.     Retaliation**

For purposes of her retaliation claim, Plaintiff proceeds under the direct method of proof, which requires her to show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action.  *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006).

Plaintiff claims that four days prior to her termination, she complained of gender discrimination to Mark Bolhuis ("Bolhuis"), a material control manager.  Plaintiff informed Bolhuis that she thought she was being "discriminated against."  (Plaintiff Dep. at 52).  She complained that she did not like the way she was treated in the back unit, she did not appreciate the types of jobs she was given, she needed more help from the men who, in her opinion, were just sitting around or talking on their cell phones, and was tired of being everyone's "personal bitch."  (Plaintiff Dep. at 51-57, 152-53).

To the extent Plaintiff engaged in protected activity (which is a matter of dispute since she only complained of "discrimination"), there is no evidence that McHenry or Gray, or that the ultimate decisionmaker, Laurain, knew about Plaintiff's alleged complaint of discrimination.  That alone dooms her claim.  *See Stephens v. Erickson*, 569

9

F.3d 779, 788 (7th Cir. 2009) ("Clearly, a superior cannot retaliate against an employee for a protected activity about which he has no knowledge.") (citations omitted). Accordingly, summary judgment is likewise appropriate on Plaintiff's retaliation claim.

## IV.   Conclusion

The admissible evidence of record, viewed in the light most favorable to the Plaintiff, does not raise a genuine issue of material fact regarding Plaintiff's claims for gender discrimination and retaliation. Defendant's Motion for Summary Judgment (Docket # 33) is therefore **GRANTED**.

**SO ORDERED** this  4th   day of April 2012.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Jonathan A. Bont
BOSE MCKINNEY & EVANS, LLP
jbont@boselaw.com

Cheryl A. Cardelli
KITCH DRUTCHAS WAGNER VALITUTTI & SHERBROOK
c.cardelli@kitch.com

John H. Haskin
HASKIN & LARUE
jhaskin@hlllaw.com

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP
amcneil@boselaw.com

Ryan Patrick Sink
JOHN H. HASKIN & ASSOCIATES
rsink@hlllaw.com